UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBIN SAAD,

    Plaintiff,

v.

Case No. 06-13494
Hon. Lawrence P. Zatkoff

GEORGE P. JOHNSON CO. and
RONALD WATTS,

    Defendants.
_____/

# **OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 30, 2008

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter comes before the Court on Defendants' motion for summary judgment [dkt 19]. The parties have fully briefed the motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendants' motion for summary judgment [dkt 19] is GRANTED.

Also before the Court are Defendants' motion to strike Plaintiff's answer to Defendants' motion for summary judgment [dkt 24] and Defendants' motion to strike Plaintiff's response to Defendants' reply brief in support of its motion for summary judgment [dkt 29]. With respect to the former of these motions, the Court finds that the interests of justice demand that Plaintiff, appearing

pro se, be excused for submitting her answer in a slightly tardy fashion. Accordingly, Defendants' motion to strike Plaintiff's answer to Defendants' motion for summary judgment is DENIED. With respect to the latter of these motions, however, neither the Federal Rules of Civil Procedure nor the Eastern District of Michigan's local rules contemplate the submission of a responsive brief to a reply brief absent approval or order from the Court. Here, the Court has not authorized the filing of Plaintiff's response to Defendants' reply brief in support of its motion for summary judgment and does not find that the circumstances of the case warrant its consideration. Accordingly, Defendants' motion to strike Plaintiff's response to Defendants' reply brief in support of its motion for summary judgment is GRANTED.

## II. BACKGROUND

Defendant George P. Johnson Company ("GPJ") is an international corporation specializing in event marketing for members of the automotive and information technology industries. In December 1998, Plaintiff received a temporary position with GPJ arranged through an employment agency. Plaintiff worked in the capacity of Job Cost Coordinator and reported to Kurt Barry who informed Plaintiff that she would be allowed to work overtime whenever necessary. Barry supervised Plaintiff only briefly, and the two had a cordial relationship. During this time, however, Plaintiff observed that a younger, permanent employee seemed to be allowed to dictate her workload while she was unable to do so. Plaintiff was unaware whether that younger employee had more, less, or the same amount of work in comparison to her. Around this approximate time, Plaintiff also noticed that an employee in her late forties was being "set up" by younger employees and "fired allegedly for age discrimination reasons."

On March 17, 1999, GPJ offered Plaintiff a position as a permanent employee. Plaintiff was

2

44-years old at the time and retained her same position of Job Cost Coordinator. Upon becoming a full employee of GPJ, Plaintiff received a copy of the company's personnel manual, which prohibits age discrimination and includes references to the Equal Employment Opportunity Commission ("EEOC"). GPJ's workplace, however, was void of the mandatory postings of EEOC materials. Shortly after Plaintiff became a full employee of GPJ, her department was restructured. Kristen Fisher became Plaintiff's immediate supervisor for a brief period. Fisher evaluated Plaintiff just once in her supervisory capacity and gave Plaintiff a primarily favorable evaluation.

After Fisher's position was eliminated, Tim Braley became Plaintiff's new supervisor. Under Braley, Plaintiff's job title did not change, but her responsibilities were somewhat altered. Braley evaluated Plaintiff yearly from 2001–2004. In 2001, Braley's evaluation indicated that Plaintiff was meeting expectations. For this same time period, Plaintiff evaluated herself as exceeding expectations in all categories. In 2002, Braley evaluated Plaintiff again, indicating improvement in various areas; the evaluation also memorialized Plaintiff's desire for a management position but indicated that "unfortunately, there is not a need at this point in the Job Cost area."

In January 2003, Plaintiff prepared another self-evaluation in which she wrote: "It appears to me that the older employees in the department are not afforded the same opportunities as the younger employees, when it comes to any type of leadership position. Experience does not seem to count for much." Plaintiff's comments originated from her observation that one younger employee, Michael Back, was able to choose his work while another younger employee, Julie Gatzmeyer, was promoted to a team-leader position. Braley evaluated Plaintiff two additional times, and each evaluation was favorable to Plaintiff. Plaintiff acknowledges that "there was nothing negative regarding my work performance in any of these."

3

Throughout the years that Plaintiff worked with Braley, several problems arose. Braley intervened when he learned that Plaintiff was locking vendor invoices in her cabinet to prevent other GPJ employees from accessing them. Plaintiff had been locking the invoices in part to frustrate what she believed to be her co-workers' attempts to manufacture overtime wages and to "make her look bad" by placing difficult invoices back on her desk immediately before they were to be processed. After speaking with Braley, Plaintiff stopped locking the invoices in her cabinet. Braley also spoke with Plaintiff about her low posting numbers as they related to the number of hours she worked. To this criticism, Plaintiff admitted that her posting numbers were low over various periods of time but explained that circumstances were occasionally beyond her control and "whatever [she] was able to post got posted." On Braley's 2001 evaluation, he commented, "[Plaintiff] has never seemed to warm up to me. She always seems guarded and nervous when I enter her cube. I would like this to change because an open working relationship between [sic] employee and her supervisor is key to productivity and the employee's career." Lastly, while having a personal conversation at work, Plaintiff verbalized her hatred of men. A male co-worker overhead this comment and reported Plaintiff to Braley who asked Plaintiff to avoid such discussions at the workplace.

According to Plaintiff, Braley "brashly remarked about Plaintiff being as old as his mother all the while preconsciously daring [Plaintiff] to snap back at him." Plaintiff does not recall the contexts in which these statements were made, but she perceived the comments as negative and felt that she could not stand up to Braley because he was her superior. On another occasion, when meeting with Braley to discuss the proper division of labor between co-worker Back and herself, Plaintiff felt that Back and Braley were communicating in a non-verbal manner, allowing Back to select the portion of work that he wanted to undertake. Later, Braley indicated that no employees

4

would be authorized for overtime pay but he allegedly "discretely" permitted younger employees overtime pay while denying the same to Plaintiff. Plaintiff continued to work overtime hours but was not compensated for them. Plaintiff requested a management position but was told that the position had been eliminated.

Toward summer's end in 2004, Defendant Ronald Watts approached Plaintiff about applying to work for him in the position of tax assistant. At that time, Plaintiff was 49-years old, and the position had been vacant for several months following the voluntary resignation of a former employee. Plaintiff was aware "of an older female who was terminated from this department and that matter caused her some concern." The position constituted an increase in base wages but was salaried rather than hourly, meaning that overtime would never be available to Plaintiff. The choice to apply for this job and accept it once it was offered to her rested with Plaintiff—Watts did not present the position in such a way as to indicate that Plaintiff had to accept the new position or lose her old position. Plaintiff ultimately decided that taking the job would be a "good move," especially because she felt that the younger employees were effectively forcing her out of the Job Cost position. Plaintiff accepted the tax position and commenced work in her new capacity on September 1, 2004. Plaintiff had no tax experience but was assured by Watts that he would train her. Watts evaluated Plaintiff once, on March 16, 2005, giving a generally positive review but indicating several areas of improvement and potential concern. Watts also declined to give Plaintiff a raise, stating that he would reevaluate her in June to assess her progress. This follow-up evaluation never occurred.

Approximately at the time of Watts's evaluation of Plaintiff, three accounting employees—Michael Back, Julie Gatzmeyer, and Jas Jonjua—were promoted within the accounting

5

department. All three of these individuals were younger than 40-years old.

Plaintiff's work under Watts was problematic. According to a memorandum placed in Plaintiff's file, Plaintiff repeated mistakes, prepared forms using incorrect figures, entered data in the wrong currency, and failed to include appropriate documents on various projects. According to Plaintiff, any confusion or problems that arose from her work derived from the fact that Watts refused to explain the entire process to her. On September 7, 2005, Plaintiff's employment was terminated; she was 50-years old. Watts made the termination decision in consultation with the executive director of human resources and with final approval from Judy Skiles on account of Plaintiff's persistent inability to perform the requirements of her position. Watts only told Plaintiff that "this is not working out" before leaving her with human resources personnel. Several days prior to the termination of Plaintiff's employment, Watts had hired a temporary employee under the age of 40 "to help out." After Plaintiff was released, the younger temporary employee took her place.

On January 11, 2006, Plaintiff filed a charge with the EEOC, alleging that she was denied overtime pay, denied a promotion, and unjustly terminated because of her age. She received a letter to sue and now brings this claim against Defendants under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should

6

be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To support its motion, the moving party may show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although all inferences must be drawn in favor of the nonmoving party, this Court bears no obligation to imagine favorable facts where the nonmoving party has alleged none. The moving party must also set forth facts sufficient to establish its case: "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Defendants argue that several of the actions about which Plaintiff complains occurred over 300 days prior to her filing her claim with the EEOC and are consequently time barred. Defendants further contend that Watts is not a proper party under the ADEA. Finally, Defendants argue that Plaintiff has not demonstrated a prima facie claim for discrimination under the ADEA and, in particular, has not shown that the termination decision was motivated by age discrimination, that she was treated differently than comparably-situated employees, or that the legitimate reasons set forth to support her termination was mere pretext.

Plaintiff responds that the actions about which she complains are subject to equitable tolling, thereby excusing the fact that they occurred outside of the ADEA's 300-day window. Plaintiff also argues that Watts is a proper defendant in light of the ADEA's definition of "employer." Plaintiff maintains that she has set forth facts sufficient to establish a prima facie case of discrimination as well as to demonstrate that Defendants' proffered reasons for her dismissal were mere pretext.

A. **DEFENDANT WATTS**

Defendants maintain that Plaintiff's claims against Watts should be dismissed because he is not a proper defendant under the ADEA. Under the ADEA, an "employer" is "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . [and] any agent of such a person." 29 U.S.C. § 630(b). In interpreting similar statutes, "numerous courts, including this one, have held that supervisors, sued in their individual capacities, are not included within the statutory definition of 'employer' under Title VII and its sister civil rights statutes, and accordingly cannot be held personally liable for discrimination." *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999); *see also Liggins v. Ohio*, No. 99-3535, 2000 U.S. App. LEXIS 1938, at *6 (6th Cir. Feb. 8, 2000).

Plaintiff cites to *House v. Cannon Mills Co.*, 713 F. Supp. 159 (M.D.N.C. 1988), in support of her contention that Watts may be individually liable for age discrimination. That case, however, relied upon the "agency" language contained in the ADEA's definition of employer. As articulated by subsequent decisions, the statute's "agency" language simply reflects Congress's intent to incorporate the principle of respondeat superior, not to create individual liability. *See, e.g.*, *Nabozny v. NCS Pearson, Inc.*, 270 F. Supp. 2d 1201 (D. Nev. 2003); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510–11 (4th Cir. 1994), *cert. den.*, 513 U.S. 1058 (1994). Accordingly, the Fourth Circuit has rejected the *House* court's interpretation of 29 U.S.C. 630(b). *Birkbeck*, 30 F.3d at 510–11. Because the ADEA limits civil liability to employers, Watts, as a GPJ employee, is not a proper Defendant in this matter and is hereby dismissed.

**B. 300-DAY LIMIT**

Some of the events that Plaintiff complains of occurred more than 300 days prior to her filing

8

her complaint with the EEOC. The ADEA mandates that individuals file their claims with the EEOC "within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier." 29 U.S.C. § 626(d)(2). Filing one's claim outside of this window results in dismissal. *See Janikowski v. Bendix Corp.*, 823 F.2d 945 (6th Cir. 1987). The proper approach to calculating time focuses on "the time of the discriminatory act, not the point at which the consequences of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981). Acts of which Plaintiff complains that occurred outside the 300-day window, then, are not to be considered unless some equitable principle warrants their consideration. *Sims-Eiland v. Detroit Bd. of Educ.*, 173 F. Supp. 2d 682, 688 (E.D. Mich. 2001).

The 300-day limitations period on ADEA claims "is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Five factors generally guide the determination as to whether equitable tolling is appropriate in a particular case:

1) lack of notice of the filing requirement;
2) lack of constructive knowledge of the filing requirement;
3) diligence in pursuing one's rights;
4) absence of prejudice to the defendant; and
5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement for filing his claim.

*Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). These factors are not comprehensive nor do they necessarily apply in each situation. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). The applicability of equitable tolling is rather a determination to be made on a case-by-case analysis. *Truitt*, 148 F.3d at 648. Most cases in which courts have decided to apply equitable tolling principles involve instances of misrepresentations or wrongdoing on the part of the defendant in

9

attempt to prevent the plaintiff from filing her claim in a timely manner. *See, e.g.*, *Amini v. Oberlin Coll.*, 259 F.3d 493, 501 (6th Cir. 2001). An employee may have constructive knowledge of the EEOC's filing requirements "[w]hen an employee is generally aware of his rights." *Jackson v. Richards Med. Co.*, 961 F.2d 575, 580 (6th Cir. 1992). In cases where "the court finds that the plaintiff knew, actually or constructively, of his ADEA rights, ordinarily there could be no equitable tolling based on excusable ignorance." *Id.* at 579.

Here, Plaintiff maintains that GPJ did not post EEOC materials and, although GPJ disputes her contention, the Court must accept it as true for the purposes of the present motion. Upon becoming a full employee of GPJ, Plaintiff received a copy of GPJ's employee manual. At the time she received the manual, Plaintiff signed a form indicating that she had received and reviewed the manual. Plaintiff acknowledged that she received at least one updated version of the manual in 2004. That particular version contains a section entitled, "Equal Employment Opportunity," which specifies that GPJ will not discriminate based on its employees' ages. The section also sets forth an internal procedure for addressing potentially discriminatory conduct and pledges that GPJ "will not retaliate against [its employees] for filing a complaint." Although the manual does reference contact information for the EEOC, it only does so under the category addressing sexual harassment. Plaintiff indicates that she only brought her concerns to GPJ "subtly" out of fear of retaliation but further indicates that these concerns went unanswered. Plaintiff also makes repeated references to "a similarly aged and employed female who was allegedly fired in violation of the ADEA Act." All of the foregoing circumstances suggest that Plaintiff had constructive notice of the Act's filing requirements. Accordingly, equitable tolling is not appropriate in this instance.

Even if Plaintiff lacked constructive notice of the filing requirements, she did not

10

demonstrate diligence in pursuing her claim. As early as January 2003, Plaintiff allegedly suspected discriminatory conduct in the workplace. Yet Plaintiff did not utilize the internal procedures set forth in the company manual even though those procedures included explicit protection against retaliation. Instead, Plaintiff prepared a self-evaluation in which she alluded to possible disparate treatment of older employees. By her own admission, Plaintiff's reporting of age discrimination at GPJ was "subtle." Under the circumstances and absent a formal complaint, the Court finds that Plaintiff's subtle and indirect complaints of discrimination in the workplace were unreasonable attempts to pursue her rights. Therefore, even if Plaintiff lacked constructive notice of the EEOC's filing requirements, the Court finds that equitable tolling in this case is inappropriate. Accordingly, only incidents of which Plaintiff complains that occurred after March 17, 2005, may be considered by the Court. The remaining incidents, including those occurring while working for Braley, are time barred and may not be considered.

### C. PRIMA FACIE

The ADEA prohibits employers from discriminating "against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The Court uses the *McDonnell Douglas* framework to analyze indirect age discrimination claims under the ADEA. *Hedrick v. W. Reserve Care Sys. & Forum Health*, 355 F.3d 444, 459 (6th Cir. 2004). The Supreme Court describes the process as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext

11

for discrimination.

*Tex. Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (citations omitted). The parties dispute the appropriate test for establishing a prima facie case of age discrimination. The Court uses a different test for instances in which a plaintiff is replaced by a younger employee and those in which the plaintiff's position is eliminated altogether. In this case, Plaintiff alleges that she was replaced by a substantially younger employee and, under those circumstances, she sets forth the proper test, which requires her to show: "(1) [s]he was at least 40 years old at the time of the alleged discrimination, (2) [s]he was subjected to an adverse employment action, (3) [s]he was otherwise qualified for the position, and (4) the successful applicant was substantially younger than the plaintiff." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998); *see also Blair v. Henry Filters, Inc.*, 505 F.3d 517, 529 (6th Cir. 2007) (articulating the fourth prong as whether "the employer gave the job to a younger employee"); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir. 1982) (articulating the fourth prong as whether the employee "was replaced by a younger person"). Defendants mistakenly advocate for the test employed where a plaintiff's position is eliminated. *See, e.g.*, *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir. 1998) ("Where the employer *eliminates* an employee's position pursuant to a *reduction in force or a reorganization*, the employee establishes a prima facie case of age discrimination when he or she . . . .") (emphasis supplied).

Construing the facts of this matter in the light most favorable to Plaintiff, she has satisfied her burden of setting forth a prima facie case of age discrimination. At all times while employed with GPJ, Plaintiff has been over forty-years old, GPJ terminated her employment, she was presumably qualified for the position, and she was replaced by an individual who was allegedly

substantially younger than she.[1] Demonstrating that one was replaced by someone "substantially younger" satisfies the fourth element of the prima facie case. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

Because Plaintiff satisfied her initial burden, the burden then shifts to GPJ "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine*, 450 U.S. at 252–53. GPJ maintains that Plaintiff's work under Watts was problematic. Specifically, a memorandum, presumably prepared by Watts, was placed in Plaintiff's file, indicating that she transferred incorrect numbers, did not include necessary workpapers in her submissions, had difficulty grasping simple concepts, entered data using the wrong currency, erred in inputting data, was inefficient, and did not follow written instructions. The Court finds that the combination of these shortcomings amounts to a legitimate, non-discriminatory reason for the termination of Plaintiff's employment.

Because GPJ has articulated a legitimate, nondiscriminatory reason for dismissing Plaintiff, the burden returns to Plaintiff to establish that the proffered reasons were mere pretext for discriminatory conduct. Due to the timing of Plaintiff's filing, the Court may only consider actions occurring after March 17, 2005. In the relevant time period, Watts never commented on Plaintiff's age. Nor has Plaintiff produced any evidence that any individual treated her differently on account of her age. Instead, Plaintiff relies on time-barred comments from a different supervisor and contends that Watts failed to train her properly. Plaintiff argues that she had no knowledge of the memorandum commemorating her various shortcomings until after she was fired. In the Employee Performance Review conducted by Watts, however, he notes that "[a]lthough Robin in [sic] aware

---

[1] Neither party has provided the Court with the age of Plaintiff's replacement. For the sake of this motion, the Court will accept Plaintiff's uncontested allegation that her replacement was substantially younger than she.

13

of the various tasks and is prioritizing her work, workpapers are not always complete and errors need to be reduced. Over the next few months Robin should focus on self-review of her work product prior to submitting." Watts further indicated that "[t]hese items will be of concern only if improvement is not seen." Based on the content of the performance review, Plaintiff had notice of the fact that she was committing an unacceptable amount of errors and needed to reduce them. Without more, these allegations do not establish that GPJ's reasons for terminating Plaintiff's employment were mere pretext for age discrimination.

Although she is able to state a prima facie case of age discrimination, Plaintiff is unable to establish that the legitimate reasons set forth in support of Defendants' termination of her employment were pretextual. Even if the Court considered the actions that occurred over 300 days prior to Plaintiff's claim, those events would not advance Plaintiff's argument. The alleged comments relating to Plaintiff's age were made months before she was released, and Plaintiff was unable to recall the contexts in which the comments were made. Isolated and ambiguous comments are generally insufficient to support a finding of discrimination. *See LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 380 (6th Cir. 1993); *Phelps v. Yale Security, Inc.*, 986 F.2d 1020 (6th Cir. 1993), *cert. den.*, 510 U.S. 861 (1993) ("isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.") (quotation omitted). In addition, the fact that several younger employees were promoted months after Plaintiff voluntarily moved to another department, without more, does not establish discrimination. Finally, Plaintiff's assertions that other employees were discreetly permitted overtime pay and were very subtly disrupting Plaintiff's invoice processing do not point to discrimination when lacking any corroboration

## V. CONCLUSION

For the above reasons, Defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.


                                        S/Lawrence P. Zatkoff
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2008

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 30, 2008.


                                        S/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290